First case up, United States v. John Green. Mr. Minns, you're up, sir. May it please the Court, I'm Michael Minns for John Green. At the table is Seth Crutcher, who did the reply brief for us, and Matthew Falks, who filed the amicus brief we just met. I'm having trouble here. It'll pick you up, just speak up. You're a good theater voice. Thank you, Your Honor. It does. Every trial I've ever had, that's the first thing the judge or jury does, is tell me to speak up. I'm 42 years, and maybe I'll learn it after I practice a little longer. Thank you, Your Honor. I want to move directly to the government's, basically there's two stipulations, concessions, we say them in both briefs. Let me just ask you something so we know the terrain. As I understand it, trial was set for the 23rd of this month. I don't know where I heard that or saw that in my file, but when is the trial set? It's set the 23rd of this month. Well, don't we have a mootness problem here? I mean, we're fast, but I don't know that we're that fast. It's going to be completely up to you, Your Honor. It was filed immediately, it was run immediately, but that's the way the thing happened. The court could decide that it is not moot, or the court could decide it's moot, and if they do, gosh, I'd probably rather not have the hearing. But the trial hasn't been heard yet. I'm not expecting a continuance. 43 years, I've never had a client say, once the judge says, you're on bail, bond, I've never had a client say, what about my gun? I've never had it happen. Well, that's got nothing to do with the trial setting. Yes, sir. So you need to let us know immediately when trial begins so that if we haven't rendered an opinion by now, it's moot, because once you're in trial, it's no longer pretrial bail, is it? I think it would be until the verdict comes down. Well, okay. How many years do you think this trial is going to take? That's very sarcastic. Yes, Your Honor. I think my rough guess, both sides a week on the high side. All right. You need to keep us posted. We will. And did you move for an expedited appeal here with us? I don't believe so, Your Honor. I don't believe so, and that was my error. The opposing counsel had a vacation, asked for a little bit of time, and I felt that was reasonable, and I yielded to that. And if that's cost us the issue, my client cares about the Second Amendment, and so he wants the ruling. For all practical purposes, it's not going to make his life a whole heck of a lot of difference regardless. I acknowledge that. He may not even pick up the guns before the trial starts if the court were to— That's another mootness point. The only basis you're urging here that he should have this no-farms ban lifted is because of the bears in Utah around his home, and I don't know when winter begins in Utah, but I would think it's a few months off. That's what I put on the original motion and argued the first day, but that's not the issue, and I had become educated to understand it. I don't own a firearm. I've read about the Second Amendment now. I've read Heller, and I think I have a basic understanding of the reasons why people feel this way. When Heller came out, as the court knows, it became a fundamental civil right, just like freedom of speech, freedom of press, and so it's important, and it will be important in other cases too, so it should be ruled on, and it should be granted. Are you seeking some sort of categorical ban on pretrial prohibition of firearms? I know you couldn't be doing that. I'm not doing that. Well, that sounds like what you're trying through Heller. No, I'm just—I didn't decide Heller. My intention on it is irrelevant, but Heller has made it clear that it is a fundamental core constitutional right to give the same dignity and respect as the bond element, the Eighth Amendment, Fourth, First, Second, Third, whatever. It's a core constitutional amount, and I do— There's other core constitutional rights, like the right against searches and seizures, that people often have to give up when they're under criminal charges. Absolutely, Your Honor, and if there were one iota of evidence or reason, then I would yield in this. There is none, none whatsoever. Let me ask, so the magistrate rules, then it gets appealed de novo to the district court. The government files in the—if you want to call it an appeal, but in the review by the district court, the government submits an article talking about your client's activities and perceived hostility to federal law enforcement. Then the district court rules and says she's going to keep the condition in place. She doesn't give any reasons that I see. Can we rely on that article in looking at what the district court decided? It's hearsay, but I think you could in a bond hearing. I think you could look at the article. If you do look at that article— I mean, hearsay rules don't apply in a bond hearing. I guess I'm getting more at did the district court actually rely on that. I have no idea. I have no idea. I'm—what the district court said, and the district court didn't say so. If the district court relied on that, then this is error. I mean, there's nothing in there that politicians don't say over and over again in both parties. It's not I will revolt, I will disobey the law, I will do this. It's an expression in that article that federal government has gotten out of hand in places, and that's what he told the voters when he was running for office. That would— Did the district court rely on conversations with the pretrial services personnel? And if so, is that evidence in the record? No, there's nothing in the record whatsoever. The only thing in there is blind speculation and a footnote in the government's brief suggesting that that may have happened. There's no evidence of it. And my client spoke to the pretrial officer, and we were told by the court to talk to him. My client talked to him, asked if he objected, and he said, absolutely not, John. So there on a first-name basis, he has no problem with it. We don't know where that came from. He's a man with no criminal record of any kind. Frankly— Well, let me ask you. Part of the government's defense is based on a statute which says, okay, if a new matter or new information is provided, you know, there's a basis for a change. And so they say, well, he knew at the initial appearance about the barriers and the need for the gun, et cetera. No formal motion. This is just presented in a handwritten note, so they rely heavily to say, well, it's not new information. Maybe you got you, maybe not, but it's not new information. So does it matter? Do you have any case that, you know, sort of distinguishes that or what's your take on relying solely on this time and element? Well, I think they can—I think—I mean, the district judge can rely on anything that she chooses to rely on as long as it makes some sense and it's rational. Well, but I'm saying if she's purportedly relying on a statute or a regulation, I mean, that's just not pulling it out of the hat. I mean, it says that in the language, if information which was not known. So I'm just asking you, is that directive here applicable or do you have a case that says, yeah, that's true, but? No, no. If there is a legitimate reason or new information, you can—they can rehear bond 100 times. Any time they get—did I misunderstand the question? Well, let me ask it another way. Is it the case that when your client initially appears, he was aware of the circumstances of the bears and the need for a firearm for those circumstances at that point in time just as he was when he presented the note? Yes, Your Honor. I don't think his reason for a court constitutional right matters. And my reason—I was sitting there outside the courtroom with him. He had just come back with a case that had returned these rights to someone that had been convicted 20 years earlier. I believe it's the Seventh Circuit case, which has now been reversed. But a district court had given it to them, and I realized that I had erred in not listening to my client because I had not asked for that. So I handwrote an addition to go before the court, and I asked him, what are the reasons why you need it? I was in error. My original motion and brief were in error. You don't have to have a reason for having a court constitutional right. You have that right. It cannot be taken away from you unless there's a good reason. But was the court constitutional right urged in your handwritten note to the judge? I didn't think it was. No, Your Honor. It wasn't. So we're back to the bears, and I'm not talking about Chicago. Right? I mean you've got to let the judge know why the judge needs to rule. You can't just keep making stuff up on appeal. Well, what happened at the hearing is that they pretty much told us he was going to get guns, but he was going to be limited, and they told us to negotiate and have a hearing later, and the hearing later never came. So I had no opportunity to study it or anything else after that. But the court, I understand that, yes. If that's this issue, that you need a gun for bears, that's what I raised in that moment in that hearing. But that's not the only thing that I raised in the rehearing de novo in front of the district court. I believe in there we raised that it was a court constitutional right. What do you mean you believe? Did you or didn't you? I believe so, Your Honor. I'd have to reread the motion. I apologize to the court. Even if I did not, it's a court constitutional right, and no, I know I put second amendment in it, Your Honor. So to me, I can't recall the exact words or language that I had in there. Would it be permitted? I don't mind answering any number of questions, but I'm down to 410. I'd like to be permitted to hold some for rebuttal if possible. Well, you've reserved your rebuttal time notwithstanding. You had 15 running, and you've got five holding. Sorry, Your Honor. Well, I want to go back to that article. You say it's just normal political views, and the thing is it's not even a First Amendment issue here. It's a Second Amendment. But the question is whether there's a reason to believe this person could be dangerous with a gun while on pretrial release. And it says he's part of a group that says sheriffs have the right to arrest federal officials and resist federal laws. And as the magistrate said, there's a concern about pretrial services officers. So why isn't that a reasonable concern in this situation? Well, first of all, he's not a sheriff, and in fact— Because he lost the election for that. Yes, Your Honor. But, in fact, if someone goes out to property, in general, they'll bring the local law enforcement. If the federal government goes out to property to do something. But federal officials aren't exempt from state laws. If they've got a federal warrant or if they've got a federal execution or arrest warrant or search warrant, they're probably— That's pushing it. I mean, I guess the judge didn't say that. I mean, if the court feels that someone can get that from that language, then the court should have said that in the order. I think the court is required to give their specific reasons. The only specific reasons was the general fear that a parole officer—the officer checking the house without call of fire. This is a fairly common—it's not automatic, but it's a fairly common condition of pretrial release. In your view, what does it take to allow a magistrate judge to impose this condition? I don't think it— Does the person have to have a violent criminal history? No, I don't think so. So what would be an example of a white-collar criminal who could have this condition imposed? White-collar criminal—as a general rule, I think most white-collar defendants will be entitled to maintain their gun. But if the white-collar person has a bunch of traffic tickets or hit and run or something like that, or if the white-collar person says, I'm not going to obey an order or has a history of disobeying an order, something— there's got to be some—there's got to be something. Otherwise, this is a blanket elimination of arms rights for everyone who is arrested. There's a creeping thing that keeps taking more and more rights away from people while they're presumed innocent. And our goal is to take the fewest rights away from someone who's presumed innocent until convicted. Well, it's long been the case that felons who have been convicted can't possess firearms. What do you think is a greater Second Amendment intrusion, the lifetime ban on felons possessing firearms or the temporary ban on people possessing firearms while they're under indictment? Well, the lifetime ban is a greater intrusion, but it's justified by the law. The temporary ban—a temporary ban on free speech, a temporary ban, as you mentioned earlier on the Fourth Amendment, for example, we could eliminate the Fourth Amendment. It just seems to me all your arguments, look, he's a white-collar, he has no criminal history. Why wouldn't that apply if he's convicted at the end of the month? Wouldn't those same arguments apply to the ban on him possessing a gun as a felon since he has no violent history? The Bindrup decision seems to indicate it's a possibility. That was an in-bank decision out of the Third Circuit. So that issue isn't ended for all time, but it's not related to our issue today. Our issue— What are you—what's the relief you're seeking from us? Are you seeking from us an advisory opinion, an opinion in a hypothetical situation, given your client may not even be back there with the Bears, et cetera, a statement about the Second Amendment, or what? I mean, what is the relief you want us to send it back to the court to say, well, if you're really relying on pretrial services, say so. As you've been asked, you know, the trial is there. I mean, what is the specific relief you're seeking? Just tell me in one sentence. Vacate this, and if it's too late, then it would be an advisory opinion, I guess, but I don't think it's too late because this is a national issue that's going on over and over again. See, that's what I keep talking about. You keep talking about national and so forth as if you're asking us to make a policy statement as opposed to a ruling in a specific case with a specific client, and some of your arguments, we get that. But that's why I ask, well, what is the relief you're asking for in this case, you know, this client with a trial, you know, brewing down the road and all that we've said? That's why I said tell me in one sentence. You said vacate. Is that what you're saying? Yes. One sentence. Prior to Heller, we wouldn't have standing to be here. Heller has now raised this to a core constitutional right, and so this Second Amendment, unless the Supreme Court changes its mind, has the same status as the First Amendment and the right to counsel. So you want us to hold it under Heller the imposition of the restriction as here in a pretrial circumstance is per se unconstitutional. Is that the bottom line you want from us? That would be my first choice, Your Honor, if there's no reason given. You want to be clear about the relief you want us to hold that under Heller, the imposition of pretrial restriction on the firearms in this circumstance is unconstitutional per se, no matter what reasons. I mean, I'm not trying to put words in your mouth. I just want to understand. In this particular situation, it is unconstitutional because there's – and it's not just the Second Amendment. It's the Fifth Amendment too because there is no reason given, and we're being asked – you're being asked to speculate now. So you've seen the reading, and Judge Costa is reasonably speculating on what might have brought the court to that. All right. I got you. I just wanted to know in one sentence. You've told us. All right. You've reserved your rebuttal time, and so let's hear from the government, and then you have an opportunity to come back up with a rebuttal or pick back up on the argument then. Thank you, Your Honor. All right. Thank you, sir. Ms. Bagley. May it please the Court, Katie Bagley on behalf of the United States. Ms. Bagley, we're always happy to have the Department of Justice grace this courtroom. Why are you here as opposed to someone from the U.S. Attorney's Office in Texas? This case is being prosecuted in the Northern District of Texas by two attorneys of the tax division. So I'm handling the appeal because the case is being handled by our – And refresh my recollection why it's being tried in Dallas as opposed to in Utah. The defendant's alleged co-conspirators reside in the Northern District of Texas, and the conspiracy was carried out in that district. There's nothing special about the Second Amendment in this context. The Bail Reform Act permits a district court to temporarily restrict a defendant's constitutional rights if it finds that that's reasonably necessary to assure the safety of others. So the question before this court is, did the district court abuse its discretion? We think the answer is no. I'd like to start – Well, when you say, did the court abuse its discretion, that implies that the fact they waited until a second motion to seek, the basis being Bayer's in Utah, that we would give it the same standard of review as if they had raised it in the first bail hearing. Do you not think there's a more limited review for the second hearing? Well, I think the standard of review is abuse of discretion because what this court is reviewing is the district court's de novo review of the magistrate judge's findings. So I think it's relevant that the defendant did not raise these issues before the magistrate judge, certainly not at his first appearance, and not until his – I mean, many of his issues were not fleshed out until his motion to the district court for reconsideration. So I think that's relevant, particularly to the magistrate judge's finding that there was no new information that was relevant to the conditions of release, which the district court agreed with because it overruled the defendant's objections on that point. But I think what this court is reviewing is the district court's de novo determination of the issue. And is it your understanding that trial is still set for the 23rd of this month? That's correct, as of Friday afternoon when I checked the docket and with the prosecutors. And that it will last about a week? I think that's a fair estimation. And is it your understanding that once the trial is over, not when he's sentenced, but once the trial is over, pretrial bail ceases, and then they've got to seek a new form of bail? That's correct. He would then have the conditions set for if he sought release pending appeal or pending sentencing. But the standard would change. There would be a new – Pretrial bail ends the last – when the verdict comes in. I think that's correct. You mentioned the district court's decision is what we're reviewing, which seems right. The district court just made a minute entry order. It basically just says she agreed with the magistrate judge. So what can we assume the ruling was based on? In particular, those additional things you submitted to the district court, can we view those as part of her decision? Yes, you can. First of all, the district court had that information in front of her. We presume she read the party's submissions. The government discussed the article in the defendant's statements in its motion. And certainly this court can affirm the district court on any grounds supported by the record. And in this case, the district court had before it information indicating that the defendant had no respect for the federal government and believed it was appropriate for local law enforcement to intervene on behalf of people engaged in armed conflict with federal law enforcement officers. And that alone, I think, would justify the district court's agreement with the conditions of release, that those conditions were necessary to reasonably assure the safety of pretrial officers who were supervising the defendant. How do we know about the conversation or information the district court got with pretrial services? I mean, what do we look to know that that occurred or what the conversation was? We do not know the content of that conversation. We do know that the magistrate indicated that she wanted to speak to the supervising pretrial services officer when the defendant first objected to the condition. We know that she repeatedly stated their recommendation would be very important to her. It's not in the record, but we have reason to believe that conversation happened. But the important thing, then, is that the magistrate again found that those conditions were the least restrictive necessary to reasonably assure the safety of pretrial services officers. It's my understanding that- As you said, we can affirm for any basis that's in the record. So if it's not in the record, how do we affirm based on- you follow me? I understand what you're saying. So the content of the pretrial services recommendation is not in the record. What we do have is the magistrate judge's findings, as well as the additional information that was before the district court. We don't know whether the district court had any conversation with pretrial services. There is no indication one way or another in the record on that point. Now, the procedure that was followed for the second motion, counsel has said that the Second Amendment wasn't raised. Well, I was just checking the hearing, and it looks like the magistrate judge does refer to the Second Amendment. She just doesn't refer- this is at the hearing, does not refer to Heller. This new basis is fundamental right basis. Correct. Then the magistrate judge keeps the bail conditions as they are, the pretrial conditions. They object, goes to the district judge. How was the argument couched to the district judge in the objections about this fundamental right? So the defendant did discuss the Second Amendment. In particular, he relied on the Arsberger case, which, as we know in our brief, is an opposite, because Arsberger dealt with mandatory conditions of release. Certainly, this is not an Adam Walsh amendments case. This condition of release was discretionary. So he does cite particularly that case. Wasn't that a due process ruling instead of a Second Amendment ruling? I think the Arsberger case actually discussed it on both grounds because it was a mandatory condition. Certainly, in this case, there's no real difference between the due process and the Second Amendment grounds because a district court is permitted to restrict constitutional rights, provided it follows the procedures laid out in the Bail Reform Act, which the Supreme Court has already held are adequate to satisfy due process. All right. So it's raised the fundamental right is raised in objections to the district judge. Fundamental right wasn't raised to the magistrate judge, though, was it? No. It was not. There were no cases cited in the defendant's initial motion objecting. No, ma'am. I'm talking about the second motion where they had the hearing with the magistrate judge. Correct. But that hearing with the magistrate judge was this fundamental right under Heller point raised. I do not believe so, no. All right. It was a reference to the Second Amendment. So it's raised for the first time before the district judge. Correct. Why wouldn't that be waived? I know if you fail to object to something to the district judge, we review for plain error. But why wouldn't that whole issue be waived since it wasn't even raised to the magistrate judge, assuming it wasn't raised? I'm not prepared to say that it would be waived, and that's because the district judge conducts a de novo review and can even take additional evidence because the district judge is the court of original jurisdiction. So I'm not prepared to make a definitive statement about whether that would constitute a waiver. Certainly we did not argue below that he had waived that issue. It's our understanding that the district court, in conducting a de novo review, could even have held an additional hearing if she had wanted to. We set the standard of review, not the parties. Correct. And we always welcome the parties' advice, and we, in fact, require it in their briefs that they say what they think the standard review is. But we set it. If we think the issue is waived, it's waived as far as our court goes. Absolutely. This gets a little sticky because this is a point that should have been raised to the magistrate judge and could have been heard at this hearing. I know the district judge reviewed the record, but the district judge is just reviewing what was before the magistrate judge. So it might be a waiver. As I said, that may be so, but I'm not prepared to make a definitive statement one way or another. To what extent are you, the government, relying on this? It wasn't raised initially in the initial appearance. It's raised, what, 30 days later in the note, et cetera. To what extent is the government relying on that? Is that the first order of reliance by the government as to why we should deny the relief because it was raised late and didn't bring up new information that wasn't known to the defendant? How much is the government relying on that, and does that in the face of the fundamental rights issues, does that carry you to the finish line? Yes, I believe I understand your question. So first of all, I think it is an independent ground for affirming the decision below because it's not so much that he raised it late. It's not a timing issue. The statute requires that there be some new information that's relevant to the conditions of release, and there wasn't any. In fact, there still hasn't been any because the question before the district court and the magistrate judge is what conditions are necessary to ensure the safety of others, not why the defendant doesn't like those conditions, but what conditions satisfy the statute. And in this case, the defendant didn't raise them at the initial appearance. He didn't provide any new information to the magistrate judge, and the magistrate judge said, I found before these were the least restrictive conditions necessary, and I find they're still the least restrictive conditions necessary. And as a sort of matter of fairness, it's not unreasonable to require a defendant to make timely objections and to provide all the information to the court, and if you're asking the court to change their mind, to give them some new information. Certainly this involves a constitutional right, but again, they're not special in this context. Defendants can waive constitutional rights by failing to raise them through the whole course of the trial, and so requiring a defendant to make a timely objection to bring information before the court as quickly as possible and to provide new information if you're asking the court to change its mind is reasonable and a sufficient ground to affirm the decision below. In addition to the fact that the record supports the district court's conclusion that the condition was necessary. On the merits, it seems, with what was before the magistrate judge, what individually-based evidence of this defendant supported the firearm restriction? Before the magistrate? Right. What was particular to this defendant that supported the firearm restriction? Unfortunately, I think the record isn't clear. Because the defendant didn't object, there was no call for the magistrate judge to make any fuller explanation of her reasons. But once the motion is then made and the magistrate says, I'm worried about pretrial services going out to his house, what was in the record to support? It's not clear. Whatever the recommendation of pretrial services was, which isn't in the record. I mean, in my experience, they just typically list a bunch of conditions in the pretrial services report. They don't justify each one. I mean, as you say, unless someone's objecting, it's not really a big issue. Someone has to object to make it an issue. Correct. It just seems to me you're getting close to saying every defendant automatically can have this restriction imposed if there's no individualized finding that he's dangerous or has a dangerous history. Well, I think there's two points to that question. First of all, we don't think this condition could be automatically imposed. That would be improper. Right. But it's not that the court ---- If it can be imposed for him, who can it be imposed for? But there's two separate questions. The first is, was there an individualized determination? And the answer to that is yes. The magistrate judge, in her order denying the motion to amend, indicated that she had made such a finding. So there is a finding, an individualized determination. The question of what information supported that finding, the record is a little thin, in part because there was no timely objection. Then the record goes before the district court, who has additional information supporting its decision to affirm the magistrate judge. And it's that decision that's before this court, not the magistrate judge's determination, but the district court's determination. And the district court has additional information, which is in the record, which this court can look at. I know district courts can look at new information. It's a little concerning to me that when the district court doesn't cite this article, you would think the defendant would want a chance to respond to it if it was going to be key. I mean, I've seen situations where district courts can have a whole new hearing. That didn't happen here, of course. But that gives the defendant a chance and the government a chance to rebut what the other side is trying to produce that's new. It just seems like there would be a lot of guesswork for us to say, well, she has this short entry saying, I agree with the magistrate judge, but we're going to read that to say she relied on this new evidence, which is just a newspaper article. And in that case, if the court doesn't feel that the record below has been adequately fleshed out, in particular the district court's rationale, then the appropriate remedy would be to remand it and ask the district court either to make some fuller findings, either orally or in a written order, or to reconsider the issue up to and including taking additional evidence. So to the extent this court is not satisfied with the record below, then we think the appropriate remedy is to remand and ask the district court to explain its reasoning more fully to permit more satisfactory appellate review. Is a restriction in place while that happens, or do we vacate while that happens? I think the restriction remains in place, and then the district court is asked to either, again, either simply issue an order explaining its reasons or to reopen the condition. And we cite those cases in our brief indicating that that's the appropriate remedy, not vacating it particularly where there is evidence in the record supporting it You'd like more information about what the district court was thinking when it entered it? If we issued a four-liner today, remanding to the district court because of the incompleteness of the record or lack of clarity or whatever, to reconsider this going back down with an imminent trial proceeding, would an imminent trial date at all, I guess, merge into all that? Is that what you perceive? Well, yeah, the timing is a little tight on this one, but I think that the court could do that and simply ask the district court to explain more fully or the court confirm the district court's order, which would certainly be our preference, but that would be the appropriate remedy, not a vacation until you're sure that the district court made a mistake. This court does not presume that the district court erred or made a legally inappropriate decision absent some evidence in the record that that's what the district court did. And in this case, there isn't any. The district court said it conducted a de novo review. The magistrate judge had articulated the appropriate legal standard. There's no evidence that the district court abused its discretion. There just isn't a separate written or oral order explicating its reasons. I suppose we could argue, we could say there's a lack of standing because the issue's not ripe, because it's not wintertime in Utah. I'm not being facetious. No, I, the defendant's rationale for wanting the condition changed, I think, is not particularly compelling. Certainly he's survived one winter already without his firearms, but it's also not relevant to the question of whether the condition is necessary. It's why he doesn't like this condition. It's why he would like this condition lifted. But it's not relevant to the question of whether the condition is necessary to protect. I mean, if it's necessary, it's necessary regardless of why he would like to have a firearm. And he did not articulate at any point a reason why it's not necessary. That was not before the magistrate judge at the very outset. The magistrate judge was aware of the crime he was being charged with. I think the point is if his only reason for needing the gun is the winter, then why does it matter if he has the gun over the next few weeks in September,  I think it doesn't. It's not relevant. It was a temporally limited reason, and that reason has passed. Well, unless we are going to allow this fundamental right to have a firearm. I mean, that's the way he frames the issue. Did the district court commit clear error and abuse of discretion and violate Greene's constitutional rights? I suppose that's his constitutional claim. I don't know. I think my time is up. May I? Surely. I think, again, as we say in our brief, this isn't really a constitutional case. This is really a case about abuse of discretion. The Supreme Court has held that the Bail Reform Act satisfies due process. We know that courts can restrict constitutional rights in the pretrial context, including other very fundamental rights, including your right not to be in prison, if it follows the appropriate procedures, which is an individualized determination by a neutral judicial officer. And the defendant had that in this case.  So we would ask the court to find that the district court did not abuse its discretion and to affirm the conditions of release. All right. Thank you, Ms. Pagla. Back to you, Mr. Menz. You have your rebuttal time. Thank you, Your Honor. The government cited one case in our brief and said that was our main point. I think Bindrup was a much more important in which someone convicted is allowed to have weapons. So that's in bank in the Third Circuit. My client's never been convicted. The burden of persuasion is on the government. It is not on the defendant, and it does not shift, and that's in the government's brief, United States v. Hare. So what they've done is switched the burden of persuasion. There was really no full hearing in front of the magistrate because the magistrate was indicating she was going our way. So that was what was surprising. She said, get us some information before we could, and also negotiate. And we were negotiating with the government. Before we could get back, the decision slammed down on us, and we don't know what happened or changed the mind of the court because it was if anything did or if she just changed her mind. There's no hearing, so there were no arguments. Maybe part of the confusion was you're waiting until a hearing, a second hearing on the bail pretrial conditions, and you hand up a handwritten note to her, to the magistrate judge. I was looking back through this record, and I don't believe it's the magistrate judge's fault that this was handled in the way it was handled. Well, and blame me, Your Honor. I am. Well, I accept responsibility for that. I'm standing in the hallway. I don't think we have a right to the weapon, and my client hands me a case which says I was wrong. So I felt I'd committed malpractice in not asserting that right. No, you did not commit malpractice, arguably. Don't go to that extreme. So I filed it to stop it immediately, and I also said, Your Honor, if the government needs time, I apologize for surprising them. I handed them my handwritten. It's been so long since they had handwritten stuff that people didn't know how to use the photocopy machine down there. I apologize for that. Many, many years ago when two of you all were practicing, it was not uncommon to use handwritten materials in situations like that. But it's not the best way to do it, and my handwriting is hard to read on top of that. But we have a de novo hearing, and there is no de novo hearing. There was no original hearing, and there was no de novo hearing because they never really made, when they said what did the magistrate say, the only thing the magistrate said. What's the difference between an original hearing and a de novo hearing? Well, the hearing in the magistrate's court who made the ruling did not go into anything except brainless materials or make an agreement with the government, which we were about to have made, which would have been made had the ruling not come down. There would have been an agreement. The government wanted to limit the number of weapons. My client doesn't own any automatic weapons, so there was nothing that, that's what they were concerned about, and he doesn't own any. So an agreement would have been entered. It's de novo when it moves to the district court. So the government's position is they can bring up new things like newspaper articles that are unflattering for the newspaper that supported the winning candidate instead of my client, and that's hard core evidence, and you can extrapolate what it means, but we never got an opportunity to do that. When he first appeared, well, I'm not sure this matters, but it might matter. It's not a de novo hearing on objections to a magistrate judge's report. The de novo comes in with the way the district judge happens to look at the record. They didn't hold it. You didn't have a new hearing before the district court, did you? No, Your Honor. No, you didn't. You just, they look at the record, and then if they look at the record, then it's de novo review. But again . . . Yes. But again, you're raising an issue for the first time before the district judge that wasn't presented to the magistrate judge, and that's why this is so confused and confusing. And I didn't represent him in the very beginning, and I don't know if I would have handled it correctly then. I was not the lawyer in the first thing, but just having this checkoff list has been ruled inadequate, and there's just a checkoff list. There's this lawyer Crimmins in the second hearing. Is that just misspelling your name? Pardon? This lawyer Crimmins. No, sir, that's not me. Okay. They show Mr. Menz, but then there's a lawyer Crimmins. Was he the government? No, Cimmins. I was the lawyer in front of the current magistrate. There's another hearing where I was not the lawyer at the initial bond hearing. I was not the lawyer. I was the lawyer there, and Mr. Cimmins was the lawyer. And Mr. Cimmins and I had, we thought, an agreement on the issue. I don't think anybody in that courtroom thinks he's a threat whatsoever, and nobody expressed anything in the courtroom. There's nothing on the record that expresses that. And if someone had, we wouldn't have been about to enter into an agreement. The issue is not just bears. He was a 10-year sheriff, deputy sheriff, 10 years law enforcement. You're trying the case on the 23rd? Yes, Your Honor. All right. All right. Mr. Menz, you've got a red light. I believe we have the fullness of your arguments. I want to vote on the government. We'll consider the matter and decide it as quickly as we can. Thank you, Your Honor. Thank you, sir. Thank you, both sides. All right. We'll call up the second case.